Kevin S. SLOAN and Linnell
L. Sloan, Appellants,

v.

OWNERS ASSOCIATION OF
WESTFIELD, INC.,
Appellee.

No. 04–04–00812–CV.

Court of Appeals of Texas,
San Antonio.

May 4, 2005.

Christopher J. Weber, William D. Crist, Kristine Arlitt, Law Office of Christopher J. Weber, L.L.C., San Antonio, for Appellants.

Tom L. Newton, Jr., Audrey E. Manriquez, Allen, Stein & Durbin, P.C., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Kevin and Linnell Sloan appeal from the trial court's order granting summary judgment in favor of the Owners Association of Westfield. We affirm the trial court's judgment.

### BACKGROUND

Kevin and Linnell Sloan are the record owners of real property located at 6935 Scenic Sunset in San Antonio, Bexar County, Texas. The property is located in Westfield Subdivision, Unit 1, which is subject to a "Declaration of Protective Covenants" that was initially executed on March 25, 1998, and properly recorded in the real property records of Bexar County, Texas.[1] The Declaration includes the following provisions:

**Article 19. Maintenance Association and Maintenance Charge**

. . .

Each residential lot in the aforenamed subdivision is hereby made subject to an annual maintenance charge for the purpose of creating a subdivision maintenance and improvement fund, and a reserve fund. . . .

. . .

A lien is hereby established on the lots subject to these restrictions to secure the payment of the maintenance charge established hereby, and all present and subsequent owners of said lots should convey such lots with an appropriate reference to the recordation of these restrictions in the Official Public Records of Real Property of Bexar County,

1. The Sloans' property actually became subject to the Declaration pursuant to an Annexation Declaration executed and properly recorded on January 29, 1999, which included terms identical to those in the original declaration but covered additional property.

Texas, together with a recitation that said lien has been retained against each lot for the benefit of the Association.

. . .

The aforesaid lien shall secure payment of the maintenance charge and all past-due interest which may accrue thereon, together with all reasonable expenses, costs, and attorney's fees which may be incurred in connection with the collection thereof. Said lien shall run with the land and be a continuing charge on the land assessed, and shall also be a personal obligation of the owner(s) of each lot.

. . .

**Article 22. Enforcement of Restrictions**

The Board of Directors of the aforesaid Association, . . . and/or the Association itself shall all have the right, power, and authority, . . . to file suit for damages or for injunction, mandatory or prohibitory, to compel compliance with the provisions of these restrictions. . . . Also, . . . the right to bring an action at law to foreclose the lien hereby established to secure the payment of the aforesaid maintenance charge if any lot owner fails to cure any such default within thirty (30) days after notice.

The Owners Association of Westfield assessed maintenance charges against the Sloans as owners of property in the Westfield subdivision beginning January 1, 2001. The assessments were not paid, and after providing the Sloans with a written demand for the unpaid amounts, the Association brought suit on the debt on April 22, 2003 to recover the unpaid assessments plus costs, interest, and reasonable attorney's fees. The Association then filed a motion for summary judgment which was granted by the trial judge. The court's order granting summary judgment included the following findings: (1) the Sloans owe mature, unpaid assessments, late fees, and attorney's fees to the Association pursuant to the Declaration; (2) the Association has a lien on the Sloans' real property to secure the obligations of the Sloans; (3) the Association has met all conditions precedent to the granting of the relief requested; (4) the Association's lien was created and imposed on the real property before that property acquired, or could have acquired, status as the homestead of the Sloans; and (5) the Association is entitled to foreclosure on its lien and an order of sale in execution.

The trial court entered judgment against the Sloans for actual damages in the amount of $1,172.82, attorney's fees in the amount of $2,000, plus additional attorney's fees on appeal, and pre-and post-judgment interest. The court further ordered that the Association's lien be foreclosed and granted an order of sale. This appeal timely followed.

*Standard of Review*

■ We review a trial court's grant of summary judgment *de novo*. *Estate of Arlitt v. Paterson*, 995 S.W.2d 713, 717 (Tex.App.-San Antonio 1999, pet. denied). We will uphold a traditional summary judgment only if the movant has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground expressly set out in the motion. TEX.R. CIV. P. 166a (c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether the summary judgment record establishes the absence of a genuine issue of material fact, we view as true all evidence favorable to the non-movant and indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 548–49. To prevail on its motion for summary judgment, the Association was required to establish the existence of a lien against the Sloans'

property to secure payment of the assessments, interest, expenses, and attorney's fees; the Sloans' failure to satisfy the obligation secured by the lien; and that the Association is entitled to a judgment on the debt and foreclosure of the lien against the Sloans' property in satisfaction of the debt.

The Sloans do not dispute that they owed and failed to pay the past-due maintenance assessments; nor do they challenge the amount, reasonableness, or necessity of the attorney's fees awarded. The only issue raised by the Sloans on appeal is whether a homeowner's association can include contingent attorney's fees in its lien against a homeowner's homestead property for past-due assessments. The Sloans argue that foreclosure of the lien as security for attorney's fees was improper because (1) the Association had not actually "incurred" any legal fees due to the contingent nature of their fee agreement with counsel; and (2) the homestead protection provided to property owners in the Texas Constitution prohibits foreclosure for such a debt. *See* TEX. CONST. art. XVI, § 50. The Association contends it is entitled to recover reasonable and necessary attorney's fees for legal services incurred due to the property owner's failure to pay contractual assessments, regardless of the terms of the fee agreement between the Association and its counsel.

### Contingent Fee Agreement

 Restrictive covenants are subject to the same rules of construction and interpretation as contracts. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998); *Dynamic Publ'g & Distrib. L.L.C. v. Unitec Indus. Ctr. Prop. Owners Ass'n, Inc.*, No. 04–04–00132–CV, 2005 WL 367327, at *3 (Tex.App.-San Antonio Feb.16, 2005, no

pet. h.). Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *Dynamic Publ'g*, 2005 WL 367327, at *3. We liberally construe restrictive covenants to give effect to their purposes and intent. TEX. PROP.CODE ANN. § 202.003(a) (Vernon 1995).

The Declaration provides that a lien is established to secure payment of assessed maintenance charges "together with all reasonable expenses, costs, and attorney's fees which may be incurred in connection with the collection thereof." The Sloans contend that because the Association had a contingent fee agreement with its counsel, the Association had not "incurred" any legal expenses for which the Sloans could be held accountable. However, this court has held that, in Texas, an attorney who provides legal services to a client under a contingent fee agreement has a contractual or *quantum meruit* claim against that client in the event of breach. *Rocha v. Ahmad*, 676 S.W.2d 149, 156 (Tex.App.-San Antonio 1984, writ dism'd). Because the Association is liable to its counsel for services provided, even if provided on a contingent fee basis, and because the Association would be required to pay its counsel out of any proceeds received as a result of this litigation, we conclude the Association has "incurred" the legal fees that are secured by the lien in this case.[2] Because the Sloans do not challenge the award of attorney's fees on any other basis, we affirm the award.

In addition, the language of the Declaration is not ambiguous in this respect. It is clear from the Declaration itself that the

---

**2.** Incur is defined as, "to suffer or bring on one self (a liability or expense)." BLACK'S LAW DICTIONARY 782 (8th ed.2004).

parties intended the property owners to be accountable for attorney's fees associated with the collection of unpaid assessments. The terms of the fee agreement between the Association and its counsel are irrelevant to the Association's right to recover reasonable and necessary attorney's fees from the homeowner. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997) ("A person may recover reasonable attorney's fees ... if the claim is for: ... (8) an oral or written contract."); TEX. PROP.CODE ANN. § 5.006(a) (Vernon 2004) ("In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim."). There is no assertion that the attorney's fees requested or awarded in this case were unreasonable or unnecessary, only that they were not "incurred." Without more, the fact that attorney's fees are based on a contingent fee agreement does not in itself make the fees requested or awarded unreasonable. *See City of Dallas v. Arnett*, 762 S.W.2d 942, 957 (Tex.App.-Dallas 1988, writ denied). Because the Sloans do not challenge the award of attorney's fees on any other basis, both the award and the amount of attorney's fees are affirmed.

### Homestead Protection

 The Sloans further contend that the homestead protection provided in the Texas Constitution prohibits foreclosure for debts such as the attorney's fees involved here. This issue has been addressed by the Texas Supreme Court in the cases of *Inwood North Homeowners' Association, Inc. v. Harris* and *Brooks v. Northglen Association.* *See Brooks v.*

*Northglen Assoc.*, 141 S.W.3d 158 (Tex. 2004); *Inwood N. Homeowners' Assoc. v. Harris*, 736 S.W.2d 632 (Tex.1987). In *Harris*, the Court acknowledged the general rule that a homestead is protected against the debts of those who live in the homestead. *Harris*, 736 S.W.2d at 634. Foreclosure of a person's homestead may only be sought for certain types of debt specifically delineated in the constitution.[3] TEX. CONST. art. XVI, § 50. However, the Court in *Harris* went on to hold that, "when the property has not become a homestead at the execution of the ... lien, the homestead protections have no application even if the property later becomes a homestead." *Harris*, 736 S.W.2d at 635. Consequently, "if the lien attached prior to the claimed homestead right and the lien is an obligation that runs with the land, there would be a right to foreclose." *Id.*

In a more recent case, the court reaffirmed the reasoning in *Harris* by holding that an association may not foreclose on property for the non-payment of late charges when the late charges were not part of the original deed restrictions. *Brooks*, 141 S.W.3d at 171. In *Brooks*, after the initial deed restrictions had been recorded and the property had become residential homestead property, the association amended the deed restrictions to add the authority to assess late fees on unpaid assessments in addition to interest charges. *Id.* at 160–61. The Supreme Court agreed that the association could expand its authority to include assessing late fees for unpaid assessments, however, the court concluded that foreclosure was not an appropriate remedy for failure to pay late charges because the original deed

---

**3.** The Texas Constitution enumerates eight exceptions to homestead protection from forced sale, including: (1) purchase money security; (2) taxes due on the homestead; (3) certain owelty on partition; (4) refinancing of certain liens; (5) security for improvements; (6) certain extensions of credit in the nature of an equity loan; (7) reverse mortgages; and (8) special financing concerning manufactured homes. *See* TEX. CONST. art XVI, § 50(a)(1)-(8).

restrictions did not provide notice that late charges would also be secured by the lien on the property. *Id.* at 170–71.

 Here, as in *Harris*, the lien against the property was established years before the Sloans took possession and established their homestead rights in the property.[4] The Declaration contains a valid contractual lien which runs with the land and of which the Sloans had notice when they purchased the property.[5] Therefore, the Sloans are subject to the lien and an order of foreclosure is proper. *Harris*, 736 S.W.2d at 635–36. While *Harris* did not specifically address the property owners' obligation for attorney's fees, as is the issue in this case, the Court focused on the existence of the lien prior to the homestead right being established, and on the property owners' notice of the lien and the obligations it was intended to secure. Because all of the obligations intended to be secured by the lien in this case were included in the original Declaration, and because the Sloans had notice of both the obligations and the existence of the lien at the time they purchased the property, we conclude that foreclosure is available to the Association as a remedy. *Id.* at 635.

### CONCLUSION

Because the Association established through summary judgment evidence the existence of a lien; the Sloans' failure to satisfy the obligations secured by the lien; and the Association's entitlement to a judgment on the debt and foreclosure of

the lien in satisfaction of the debt, the trial court's summary judgment in favor of the Association was proper. Accordingly, the Sloans' sole issue on appeal is overruled and the trial court's judgment affirmed.

---

4. The record establishes that the amended Declaration covering the property in question was executed and recorded in January 1999 during planning for development of the subdivision. The Sloans apparently did not take possession and become subject to assessments by the Association until January 2001.

5. "In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice." *Harris*, 736 S.W.2d at 635. The Declaration and covenants involved here satisfy the requirements of a covenant running with the land. *See id.*